IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN DOLAN,<br><br>Plaintiff,<br><br>vs.<br><br>AERO MICRONESIA dba ASIA PACIFIC AIRLINES,<br><br>Defendant. | CIVIL NO. 19-00671 JAO-KJM<br><br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brian Dolan ("Plaintiff") brings this Title VII action for discrimination and retaliation against his former employer, Defendant Aero Micronesia ("Defendant"). The Court previously granted in part Defendant's first Motion for Summary Judgment. *See* ECF No. 27. The Court granted the motion as to Plaintiff's discrimination claim, *id.* at 5–6, but denied it as to Plaintiff's retaliation claim to the extent it was premised on Plaintiff's filing of an April 18, 2017 lawsuit against Defendant in the U.S. District Court for the District of Guam

1

("2017 Lawsuit"). *Id.* at 7–8. Now, with leave from the Court, Defendant has filed a Motion for Summary Judgment as to Plaintiff's Remaining Claim ("Motion"), arguing that collateral estoppel precludes the remainder of Plaintiff's case. *See* ECF No. 103. For the reasons stated below, the Court DENIES Defendant's Motion.

## I.     BACKGROUND

### A.     Facts

Unless otherwise noted the following facts are undisputed.

Defendant originally hired Plaintiff as a pilot in 2003. *See* ECF No. 103-2 ¶ 1; ECF No. 103-1 at 5. Beginning in 2015, Plaintiff began filing multiple actions against Defendant in different forums. *See* ECF No. 103-2 ¶¶ 3–7. In 2015 and 2016, Plaintiff filed two charges with the Equal Opportunity Commission ("EEOC"). *Id.* ¶ 3. These EEOC charges alleged that Defendant discriminated against him based on his Marshallese national origin. *Id.*

On December 28, 2016, Plaintiff filed a complaint against Defendant with the Occupational Safety and Health Administration ("OSHA") ("2016 OSHA Complaint"). *Id.* ¶ 5. The 2016 OSHA Complaint alleged that Defendant engaged in discriminatory practices in violation of the whistleblower provisions of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121. *See* ECF No. 103-6 at 1–2. AIR21 prohibits

certain employers from terminating or discriminating against employees who report alleged violations of airline safety law.  *See* 49 U.S.C. § 42121(a).

Meanwhile, in April 2017, after Plaintiff received dismissals of, and right-to-sue notices for, his EEOC charges, Plaintiff filed his 2017 Lawsuit.  ECF No. 103-2 ¶ 6.  The 2017 Lawsuit alleges that he was discriminated against because of his Marshallese national origin and retaliated against for filing a charge related to the discrimination.  *See* ECF No. 103-4 at 11–13.

Defendant terminated Plaintiff on June 12, 2017.  *See* ECF No. 103-6 at 1.  About two weeks later, Plaintiff filed a second complaint with OSHA (the "2017 OSHA Complaint").  ECF No. 103-2 ¶ 7.  Like the 2016 OSHA Complaint, the 2017 OSHA Complaint alleged that Defendant engaged in discriminatory practices in violation of AIR21.  *See* ECF No. 103-5.

On March 19, 2018, OSHA dismissed both of Plaintiff's complaints.  *See* ECF No. 103-8 at 3.  Plaintiff objected to OSHA's findings and requested a hearing before a Department of Labor Administrative Law Judge ("ALJ").  *See id.* Plaintiff and Defendant participated in a hearing on the OSHA Complaints between December 4 and December 6, 2018.  ECF No. 103-2 ¶ 11.  The ALJ issued a 42-page Decision and Order Awarding Relief ("ALJ Order").  ECF No. 103-2 ¶ 12; ECF No. 103-7.  The ALJ Order purported to limit itself to the 2016 OSHA Complaint because the 2017 OSHA Complaint was not offered as an

exhibit at the hearing and because there was no evidence that Plaintiff had appealed any OSHA finding on the 2017 OSHA Complaint.  ECF No. 103-7 at 1–2 n.2.

Regardless, the ALJ Order explicitly addressed the 2017 Lawsuit as Plaintiff argued that the filing of the lawsuit was a protected activity under AIR21 because it raised air safety concerns.  ECF No. 103-7 at 19 n.82.  Plaintiff seemingly raised the 2017 Lawsuit as a protected activity under AIR21 in his Prehearing Statement to the ALJ, *see* ECF No. 103-6 at 4–5, and explicitly argued it in his Opening Brief ahead of the ALJ hearing, *see* ECF No. 111-3 at 14.  Still, the ALJ rejected Plaintiff's argument:

> The underlying purpose of the [AIR21] Act is the protection of aviation safety related reporting.  In looking at [Plaintiff's] District Court complaint, the Tribunal finds it striking in several respects.  First in the jurisdiction section, there is no mention of any safety related matter, only allegations of employment discrimination and retaliation based on [Plaintiff's] national origin.  It is clear that the purpose of this suit was to pursue remedies for discrimination because of national origin and race, *not* to report aviation safety related matters.

ECF No. 103-7 at 19 n.82 (citation omitted).   The ALJ continued:

> While, if true, these allegations are repugnant, they have nothing to do with aviation safety.  If anything, this is a *post hoc* argument crafted in an attempt to revive the untimely allegations addressed above.  Accordingly, even assuming that the complaint in this matter extended to these post-complainant matters, this Tribunal finds that [Plaintiff's] filing of his suit in U.S. District Court was not a protected activity because it is not

> objectively reasonable that his suit pertained to violations or potential violations of aviation safety law, regulations, orders or standards.

*Id.*

Nevertheless, the ALJ granted Plaintiff $6,000 as relief for an adverse employment action Defendant took against him in violation of AIR21.  ECF No. 103-2 ¶ 12.  Specifically, the ALJ concluded that Plaintiff's decision not to pass another pilot during a "line check"[1] was a protected activity under AIR21, *see* ECF No. 103-7 at 29–30, and that Defendant's removal of Plaintiff as a line check airman was a discriminatory action in violation of AIR21, *id.* at 35–36.  But the ALJ did not grant Plaintiff all the relief he sought.  The ALJ concluded that Plaintiff's "protected activity in not passing [the other pilot] during the September 2016 checkride was not a contributing factor in [Defendant's] decision to terminate [Plaintiff's] employment."  *Id.* at 33.

Plaintiff and Defendant both appealed the ALJ Order to the Administrative Review Board of the United States Department of Labor ("ARB").  ECF No. 103-2

---

[1]  A line check is where a "check airman" flies with another pilot to evaluate that pilot's performance.  A check airman is a pilot that has been designated by the Respondent's FAA designated principal operations inspector ("POI") to perform certain inspections on its behalf; the check airman has demonstrated ability to evaluate and to certify the knowledge and skills of other pilots.

ECF No. 103-7 at 27 (footnote omitted).

¶ 12.   ARB consolidated the appeals and summarily affirmed the ALJ's decision in a written order ("ARB Order").  *See* ECF No. 103-8 at 2, 7.  It explained that substantial evidence supported the ALJ's Decision and none of Plaintiff's or Defendant's arguments on appeal raised any reversible error.  *Id.* at 6.  However, ARB also clarified the scope of the ALJ's Decision.  It concluded that while the ALJ purported to limit the Decision to the 2016 OSHA Complaint, the ALJ also disposed of the 2017 OSHA Complaint because:

> [T]he ALJ permitted all evidence and testimony concerning [Plaintiff's] reduced hours and termination into the record, and his analysis fully considered both adverse employment actions. Ultimately, he found that the termination had no nexus to an activity protected under AIR 21.  As such, we find that the record is clear on this point, and a remand for the ALJ to consider [Plaintiff's] termination from employment is unnecessary.

*Id.* at 7 (footnotes omitted); *see also id.* at 3 n.12 (noting that OSHA's dismissal that the ALJ reviewed seemed to address both the 2016 and 2017 OSHA Complaints because Plaintiff's termination was only alleged in the 2017 Complaint).  ARB's decision became final when the Secretary of Labor declined to review the ARB Order and no other appeal was taken.  *See* ECF No. 103-2 ¶ 14; Secretary's Order 01–2020 — Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 85 Fed. Reg. 13,186, 13,187 (Mar. 6, 2020) (ARB decisions "become the final action of the Department after the passage of 28 calendar days from the date on which the petition [for Secretary

review] was filed."); ECF No. 69-6 at 2.

**B.    Procedural History**

In December 2019, Plaintiff filed suit against Defendant in this Court.  ECF

No. 1.  He asserted two counts under Title VII:  Count I for National Origin

Discrimination and Count II for Retaliation for opposing the alleged

discrimination.  *Id.* at 4–6.

Defendant first moved for summary judgment as to both counts in July 2020.

*See* ECF No. 19.  The Court granted the motion in part and denied it in part.  *See*

ECF No. 27.  As to Count I, the Court granted Defendant's motion because

Plaintiff failed to exhaust his administrative remedies and because Plaintiff's claim

was untimely.  *Id.* at 5–6.  As to Count II, the Court denied Defendant's motion to

the extent Plaintiff's claim was "premised on the protected activity of filing the

2017 Lawsuit and Defendant's alleged retaliatory response of reducing [Plaintiff's]

hours from May through June 2017 and terminating him in June 2017 because such

allegations were timely contained within his 2017 EEOC Charge."  *Id.* at 7–8

(citations and footnote omitted).

As trial approached, Defendant moved to amend the then-applicable Rule 16

Scheduling Order, arguing that there was good cause to modify the schedule to

allow Defendant to file a motion for summary judgment based on collateral

estoppel.  *See* ECF No. 69-1 at 1, 5–6.  Plaintiff opposed the motion, contending it

was futile because collateral estoppel would not apply.  *See* ECF No. 84 at 2–3.

Defendant filed a reply. ECF No. 97.  The Court granted Defendant's motion,

concluding that even if Defendant was mistaken about when exactly the agency

proceedings took on preclusive effect, Defendant acted diligently based on its

interpretation of the law.  ECF No. 102 at 4–5.  Thus, the Court granted leave for

Defendant to file its proposed motion for summary judgment.  *Id.* at 5.

Defendant filed its Motion on November 1, 2021.  ECF No. 103.  Plaintiff

Opposed.  ECF No. 109.  And Defendant filed a reply in support of its Motion.

ECF No. 111.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).  In a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## III.   DISCUSSION

Defendant argues in general that Plaintiff's remaining claim before the Court is precluded based on ARB's purported factual conclusion that there was no causal nexus between the 2017 Lawsuit and Plaintiff's termination.  ECF No. 103-1 at 14. Plaintiff responds that the agency did not resolve that issue but rather decided that

Defendant had terminated Plaintiff based on the 2016 and 2017 OSHA complaints that raised concerns about airline safety and as retaliation for reporting those concerns.  ECF No. 109 at 2.  The Court concludes that the agency proceedings did not dispose of the factual issue relevant to the instant case and so collateral estoppel does not apply.

## A.    The Law Of Issue Preclusion

"The doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding."  *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995) (citation omitted).  Courts have long applied "the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."  *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).  The principle of applying collateral estoppel to an agency's decision does not depend on whether an agency is a state or federal entity.  *See id.* at 108; *see also Univ. of Tenn. v. Elliot*, 478 U.S. 788, 798 (1986).  "[G]iving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel:  enforcing repose," and enforcing repose serves "both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources."  *Elliot*, 478 U.S. at 798 (footnote and citation omitted).  But not all agency

decisions are entitled to preclusive effect.  *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).  Agency factfinding can have a preclusive effect when (1) the administrative agency acts in a judicial capacity, (2) the agency resolves disputed issues of fact properly before it, and (3) the parties have an adequate opportunity to litigate.  *See id.*; *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994).

Plaintiff does not dispute that the agency proceedings were judicial in nature, that the agency decided factual issues actually before it, or that he had an opportunity to litigate.[2]  *See generally* ECF No. 109.  Instead, Plaintiff argues that the ALJ and ARB did not decide the issue before this Court — whether Defendant retaliated against Plaintiff for filing the 2017 Lawsuit.  *Id.* at 2–3, 6.  Specifically, Plaintiff asserts that the agency only had jurisdiction to consider whether

---

[2]  In any event, the Court observes that the elements required to apply collateral estoppel to agency proceedings are met here.  The agency proceedings were adversarial, Plaintiff had counsel, raised various issues, submitted evidence, received written decisions, and appealed the ALJ Order to ARB.  *See Murray v. Alaska Airlines, Inc.*, 237 P.3d 565, 569 (Cal. 2010) (noting that AIR21 affords a complainant "a full de novo trial-like hearing before an ALJ," that satisfies the judicial capacity element of the collateral estoppel inquiry (citation and footnote omitted)); *see also Spirit of Aloha Temple v. County of Maui*, 409 F. Supp. 3d 889, 905–908 (D. Haw. 2019) (explaining the three elements involved when analyzing whether an agency's factual decision has preclusive effect).  As such, the proceedings were judicial in nature and the parties had the opportunity to litigate.  Further, the ALJ and ARB clearly decided factual issues before it, including causation between incidents like the failed line check and Plaintiff's removal as a line check airman.  *See* ECF No. 103-7 at 35–36.

Defendant retaliated against him for reporting complaints about air safety, and that the 2017 Lawsuit challenged national origin discrimination. *Id.* at 3.

## B.   The Agency Did Not Decide Whether Plaintiff Was Retaliated Against For The 2017 Lawsuit

As an initial matter, and as more thoroughly discussed below, the ALJ explicitly declined to address whether Plaintiff was retaliated against for the 2017 Lawsuit. And the ARB Order says nothing about the 2017 Lawsuit. The relevant portion of the ARB Order focuses on the OSHA complaints:

> We recognize that the ALJ stated that "the complaint before this Tribunal is limited to the 11/25/16 OSHA complaint and therefore the Decision and Order that follows does not materially discuss Complainant's allegations in his 6/27/17 OSHA complaint." However, this statement appears to be a harmless error by the ALJ.
>
> Throughout the proceedings, the ALJ permitted all evidence and testimony concerning Complainant's reduced hours and termination into the record, and his analysis fully considered both adverse employment actions. Ultimately, he found that the termination had no nexus to an activity protected under AIR 21. As such, we find that the record is clear on this point, and a remand for the ALJ to consider Complainant's termination from employment is unnecessary. Accordingly, we summarily AFFIRM the ALJ's [Order].

ECF No. 103-8 at 7 (footnotes omitted).

The lack of mention of the 2017 Lawsuit in the ARB Order and the ALJ's refusal to address the central question in this case should be enough to conclude that collateral estoppel does not apply here. Nonetheless, the Court provides a

more thorough analysis below.

### 1. A Comparison Of The Issues Before The Agency And The Issues Before The Court

To answer the question of whether the administrative agency decided the issue relevant to Plaintiff's remaining claim here, the Court addresses the nature of the claims before the agency and before this Court. Plaintiff's remaining claim here is a Title VII retaliation claim in which Plaintiff contends that he suffered adverse employment actions because he filed the 2017 Lawsuit. Title VII retaliation claims are governed by the familiar *McDonnel-Douglas* burden-shifting framework. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973) (other citation omitted)). To prevail on his claim, Plaintiff must first establish a prima facie case by establishing that (1) he engaged in a protected activity, (2) he suffered an adverse employment, and (3) there was a causal link between the protected activity and the adverse action. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a non-retaliatory reason for the adverse action. *See Bergene*, 272 F.3d at 1140–41. If Defendant articulates a reason, the burden shifts back to Plaintiff to show that the proffered reason was a pretext for retaliation. *See id.* at 1141.

In the agency proceedings, Plaintiff asserted discrimination and retaliation

14

claims pursuant to AIR21.  *See, e.g.*, ECF No. 103-6 at 1–2.  AIR21 applies a burden-shifting framework similar to the *McDonnell-Douglas* process.  *See* 49 U.S.C. § 42121(a) & (b); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) ("Section 42121(b)(2)(B), in turn, sets forth a burden-shifting procedure by which a plaintiff is first required to make out a prima facie case of retaliatory discrimination[.]").  "Under AIR–21, an employee must show, by a preponderance of the evidence, that '(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.'"  *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013) (quoting *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008)) (footnote omitted).  If the employee establishes those four requirements, "the burden shifts to the employer to demonstrate 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior."  *Id.* (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)).

The causation elements of the respective claims are at issue in this case. Defendant argues that ARB's statement that the ALJ "found that the termination had no nexus to an activity protected under AIR 21" precludes a supposedly contrary finding that there was a causal link between the 2017 Lawsuit and the

adverse employment action alleged here.  ECF No. 103-1 at 17 (quoting ECF No. 103-8 at 7).  But, as pointed out above, neither the ALJ nor ARB explicitly addressed whether there was a causal link between Plaintiff's filing of the 2017 Lawsuit and his termination.  Thus, for Defendant's theory to prevail, the agency must have determined the filing of the 2017 Lawsuit constituted a protected activity under AIR21.  If the agency so concluded and found that there was no causal link between the two, then Plaintiff's Title VII claim alleging the same must fail.  As such, Defendant necessarily contends that the filing of the 2017 Lawsuit *was* a protected activity under AIR21.  *See* ECF No. 103-1 at 10, 14.

### 2. Whether The Filing Of The 2017 Lawsuit Was A Protected Activity

Defendant argues that the filing of the 2017 Lawsuit was a protected activity under AIR21 because (1) Plaintiff argued that it was to the ALJ, *see* ECF No. 111 at 3 (quoting ECF No. 103-6 at 4–5), and (2) the 2017 Lawsuit complaint alleges various issues relating to air safety, *see* ECF No. 111 at 5–8.

Defendant is correct that Plaintiff argued that the filing of the 2017 Lawsuit was a protected activity under AIR21.[3]  For example, in Plaintiff's Prehearing

---

[3]  The Court notes that Defendant has also switched positions on this issue since the agency proceedings.  In the ALJ Order, the ALJ commented that Defendant "argues that the EEOC suit filed by Complainant in April 2017 is not protected activity as it is entirely grounded upon violations of Title VII of the Civil Rights

(continued . . .)

16

Statement to the ALJ, he noted that in April 2017 he "commenced legal action in the U.S. District Court of Guam under the EEOC." ECF No. 103-6 at 4. In the next paragraph, he asserted, "[a] causal connection exists between the protected activity [Plaintiff] engaged in and the adverse actions taken by [Defendant]." *Id.* at 5. While this portion of the Prehearing Statement is somewhat confusing, Plaintiff may have been trying to include the filing of the 2017 Lawsuit as a protected activity under AIR21. Additionally, Plaintiff included the complaint for the 2017 Lawsuit as an exhibit for the hearing before the ALJ. *See* ECF No. 103-10 at 4; ECF No. 111-4 at 2. And, most explicitly, Plaintiff argued in his Opening Brief ahead of the ALJ hearing that:

> On April 17, 2017, Complainant filed a legal action in the District Court of Guam pursuant to Title VII. Though the action was brought under Title VII, many of the allegations in Complainant's complaint against Respondent undisputedly pertain to concerns for air safety, maintenance and improper management interference with pilot decision making. An employer may not discriminate because an employee has filed a proceeding relating to any violation or alleged violation of any order, regulation or standard of the Federal Aviation Administration relating to air carrier safety under 49 U.S.C. § 42121 or any other law of the United States.

ECF No. 111-3 at 14 (citations omitted).

---

(. . . continued)
Act. Furthermore, the filing in U.S. District Court was insufficient to put Respondent on notice that Complainant was asserting a claim under AIR 21." ECF No. 103-7 at 20.

But the ALJ could hardly have been more explicit that he did not consider the filing of the 2017 Lawsuit a protected activity under AIR21.  During the hearing, when Plaintiff's counsel mentioned the 2017 Lawsuit, the ALJ stated, "I'm just going to make a point, Counsel, that 'protected activity' under the EEOC is completely different than the term used that's before me."  ECF No. 103-10 at 4. In the ALJ Order, the ALJ further rejected Plaintiff's argument, concluding that it "attempt[ed] to bootstrap time barred allegations by claiming such a filing [of the 2017 Lawsuit] resets the clock."  ECF No. 103-7 at 19 n.82.  Going further, the ALJ noted that it was "clear that the purpose of this suit was to pursue remedies for discrimination because of national origin and race, *not* to report aviation safety related matters."  *Id.* (citation omitted).  Continuing, the ALJ concluded in the alternative to its time-barred ruling, "that Complainant's filing of his suit in U.S. District Court was not a protected activity because it is not objectively reasonable that his suit pertained to violations or potential violations of aviation safety law, regulations, orders or standards."  *Id.*  Later in the ALJ Order, the ALJ reiterated that "[i]ssues concerning [Plaintiff's] alleged retaliatory termination for raising national origin is, moreover, for another forum to decide."  *Id.* at 34–35.  In short, the ALJ concluded that Plaintiff's 2017 Lawsuit did not constitute a protected activity under AIR21 and was thus irrelevant to the claims before the agency.  As such, because the ALJ concluded that the 2017 Lawsuit did not relate to air safety,

18

he did not reach the factual issue of whether there was a causal connection between Plaintiff's filing suit and his termination.  *Cf. Spirit of Aloha Temple*, 409 F. Supp. 3d at 908 (denying collateral estoppel to agency decision where agency had made no factual determination to the relevant element at issue before the district court as the agency had a different claim before it).

Rather than address the implications of the ALJ's explicit statements, Defendant argues that the Court must focus instead on the ARB Order.  *See* ECF No. 111 at 9 n.2.  This argument fails for at least two reasons.  First, there is no indication in the ARB Order that it disturbed the ALJ's finding on whether the 2017 Lawsuit constituted protected activity under AIR21, and Defendant's attempted parsing of portions of the ARB Order is unpersuasive.[4]  *See, e.g.,* ECF No. 111 at 9.  In addition to the ARB Order's concluding paragraphs referenced above, other portions of the ARB Order demonstrate that ARB did not consider whether the filing of the 2017 Lawsuit constituted protected activity under AIR21 or whether there was a causal connection between the filing of the suit and

---

[4]  For example, Defendant puts a lot of stock in the ARB Order's statement that "'the ALJ permitted ***all evidence and testimony*** concerning [Plaintiff's] reduced hours and termination into the record, and ***his analysis fully considered both adverse employment actions***.'"  *See* ECF No. 111 at 9 (quoting ECF No. 103-8 at 7).  From this, Defendant represents that ARB "disagreed" with the ALJ's conclusion "that he could only determine certain claims."  *Id.*  But reading the entirety of the ARB Order, it is clear that its conclusions were not as expansive as Defendant asserts.

Plaintiff's termination.  For example, the ARB Order repeats that the alleged protected activity occurred between August 2015 and September 2016 — a period prior to the filing of the *2017* Lawsuit.  *See* ECF No. 103-8 at 2, 5.  The background section of the ARB Order details various alleged protected activities and the procedural posture of the case but does not list the filing of the 2017 Lawsuit.  *See id.* at 2–3.  Summing up its conclusion, ARB notes that it "reviewed the evidentiary record as a whole," and "conclude[d] that the ALJ's Decision and Order awarding relief is supported by substantial evidence.  None of the arguments posed by the parties demonstrate that the ALJ abused his discretion or committed reversible error."  *Id.* at 6.[5]  Thus, Defendant's arguments that the ARB Order rejects the ALJ's explicit findings pertaining to the 2017 Lawsuit, or that the ARB Order is somehow broader than the ALJ Order, fail.

Second, Defendant's support for its argument is an unpublished Ninth Circuit memorandum disposition that affirms an ARB order on a petition for review, and does not address collateral estoppel.  *See Sievers v. U.S. Dep't of Lab.*, 349 F. App'x 201, 202, 204 (9th Cir. 2009) (mem.).  Unpublished decisions are not precedential.  *See* 9th Cir. R. 36-3(a).  And Defendant provides no support for ignoring the ALJ Order for the purposes of determining whether collateral estoppel

---

[5]  Further, as none of the appellate briefing before ARB is in the record, the Court cannot determine whether the parties explicitly argued against the ALJ's conclusion that the 2017 Lawsuit did not constitute an AIR21 protected activity.

applies.  *Cf. Spirit of Aloha Temple*, 409 F. Supp. 3d at 901 (considering preclusive effect of both agency decision and state court order affirming the agency).

In sum, the ALJ concluded that the filing of the 2017 Lawsuit was not a protected activity under AIR21, and therefore he did not consider whether there was a causal connection between that event and Plaintiff's termination.  ECF No. 103-7 at 19 n.82; *id.* at 34.  ARB did not disturb the ALJ's finding on this issue.  Thus, the agency proceedings did not resolve the factual issue relevant to the instant Motion.  Applying collateral estoppel here would in fact require the Court to reject the agency's conclusion that the filing of the 2017 Lawsuit was not a protected activity under AIR21.  As such, Defendant is not entitled to collateral estoppel.

### 3.    Whether The 2017 Lawsuit Relates To Airline Safety

While the foregoing analysis of the agency proceedings sufficiently disposes Defendant's collateral estoppel argument, the Court alternatively rejects Defendant's second assertion that the 2017 Lawsuit relates to airline safety such that the agency must have decided the causation question relevant to this suit.

Plaintiff's complaint for the 2017 Lawsuit mentions various issues relating to airline safety, but ultimately it is a fairly standard national origin discrimination and retaliation suit.  Defendant emphasizes the following paragraphs from the complaint:

21

34.   Shortly thereafter, Dolan raised safety concerns with Director of Operations Ralph [believed to be Caucasian] about APA pilots, himself included, operating the 757's with flight experience.

49.  On March 23,[ ]2016, Dolan emailed Freeman that flying to Honolulu with a broken fuel tank in the first place was a foolish and dangerous move and also relayed that Ferguson put profits over safety in pressuring Dolan and his crew to take unnecessary risks.

55.  The Honolulu FAA personnel can confirm that they conducted a ramp check, confirmed a broken fuel tank was leaking fuel and, in fact, grounded the 727 as unsafe to fly.

63.  Dolan was further disciplined in writing by APA, according to APA's records, for sending the March 23, 2016 email regarding his safety concerns about flying with a leaking fuel tank "to ALL, including the FAA."

69.  While Davis is also Marshallese, Davis, unlike Dolan, did not file an EEOC claim discrimination nor did he file safety related grievances so far as Dolan is aware.

76.  At 12:32 am that day, Brown emailed Dolan that he could file a Safety Report on Baldwin [an internal safety reporting procedure].

84.  Kohler added that shortly after the crew refused to fly, Ferguson told them they had to stay in the office all night, Mr. Brown the Director of Safety was called and Brown said they were trying to find another Captain to take the flight.

91.  Dolan denies needing to answer any calls the following week while Dolan was off, but believes that at this time APA wanted Dolan to unduly relax his safety standards to pass Goodman despite Goodman's failing his line check.

ECF No. 111 at 6–7 (emphases omitted) (alterations in original); *see generally*

ECF No. 103-4 (2017 Lawsuit complaint).  But by isolating these passages,

Defendant obscures the forest for the trees.  As the ALJ noted, "in the jurisdiction section [of the complaint], there is no mention of any safety related matter, only allegations of employment discrimination and retaliation based on Complainant's national origin."  ECF No. 103-7 at 19 n.82.  The second paragraph of the complaint states, "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination and retaliation based on Plaintiff's national origin."  ECF No. 103-4 at 1.  Throughout the complaint, Plaintiff includes the national origins or ethnicities of other employees.  *See, e.g.*, *id.* at 3.  Under the "Legal Claims" section of Plaintiff's complaint, he asserts two counts under Title VII:  Count I for discrimination based on Plaintiff's national origin and Micronesian race, and Count II for retaliation based on Plaintiff's reporting of the alleged national origin and racial discrimination.  *See id.* at 11–12.  None of the allegations in that section bear on airline safety.  *See id.*  Thus, while Plaintiff mentions issues concerning airline safety in the 2017 Lawsuit complaint, those are tangential to his allegations of national origin discrimination.

//

//

//

//

//

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, January 14, 2022.



Jill A. Otake
United States District Judge

Civil No. 19-00671 JAO-KJM; *Dolan v. Aero Micronesia*; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT